Case 1:07-cv-08782-CSH    Document 1    Filed 10/11/2007    Page 1 of 9

Keith W. Heard (KH-8578)
Michael J. Walsh (MW-6578)
Burke & Parsons
100 Park Avenue
New York NY 10017-5533
(212) 354-3800

**07 CIV 8782**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**ISLAMIC REPUBLIC OF IRAN SHIPPING LINES,**

          Plaintiff,

-against-

**GHAFFAR CORPORATION,**

          Defendant.

**VERIFIED COMPLAINT**

---

    Plaintiff, ISLAMIC REPUBLIC OF IRAN SHIPPING LINES (hereinafter "Plaintiff"), by its attorneys Burke & Parsons, as and for its Verified Complaint against Defendant, GHAFFAR CORPORATION (hereinafter "Defendant"), alleges upon information and belief as follows:

    1. This action involves claims for the breach of a maritime contract, which are admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This action also arises under the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

## THE PARTIES

    2. At all times relevant hereto, Islamic Republic of Iran Shipping Lines was and still is a foreign corporation organized and existing under and by virtue of the laws of the Islamic Republic of Iran with an office and place of business at No. 37, Aseman Tower, Sayyade Shirazee Square, Pasdaran Avenue, Teheran, Iran.

- 1 -

3. At all times relevant hereto, Defendant Ghaffar Corporation was and still is a foreign corporation organized and existing under and by virtue of the laws of Pakistan with an office and place of business at 104 Khayyam Chambers, Sharah-e-Faisal, P.E.C.H.S., Nursery, Karachi 75400, Pakistan.

4. Although Plaintiff is an entity organized and existing under and by virtue of the laws of the Islamic Republic of Iran, it is entitled to file and maintain this action because section 560.525(a)(3) of the Iranian Transactions Regulations, 31 C.F.R. Part 560, authorizes the "initiation and conduct of domestic United States legal, arbitration, or administrative proceedings on behalf of the Government of Iran or a person in Iran".

## THE DISPUTES

5. At all times relevant hereto, Plaintiff was and still is the owner of the vessel M/V IRAN SA'LAM (hereinafter the "Vessel").

6. Pursuant to a voyage charter party dated May 7, 2001 which incorporated the GENCON 1994 form, Plaintiff chartered its Iranian-flag motor vessel IRAN SA'LAM to Defendant for a voyage from Karachi, Pakistan to Douala, Cameroun to carry a cargo of bagged rice. A copy of the charter party is annexed as Exhibit A to this Verified Complaint.

7. At Defendant's request, an amendment to the agreed terms of the charter party was negotiated (while the Vessel was held up at Douala) by which Plaintiff agreed that the Vessel would complete discharge at a second port, Bissau, in Guinea Bissau, another West African nation.

8. Demurrage was incurred at the load port of Karachi in the amount of $54,177.77, no part of which has been paid, although duly demanded by Plaintiff of Defendant. Interest on this sum runs from November 18, 2001, the date payment was originally due.

9. Demurrage was incurred at the discharge port of Douala in the amount of $43,450.00, no part of which has been paid, although duly demanded by Plaintiff of Defendant. Interest on this sum also runs from November 18, 2001, the date payment was originally due.

10. Additional delays were incurred at Douala, outside of those for which demurrage serves as compensation, as a result of Defendant's instructions to the stevedores at that port to stop discharging the Vessel, pending agreement between Plaintiff and Defendant over the terms for varying the charter party so as to allow Defendant to discharge the balance of the cargo at a second port, which turned out to be Bissau. As a result of these additional delays, Plaintiff has a claim for detention in the amount of $8,583.33, no part of which has been paid, although duly demanded by Plaintiff of Defendant. Interest on this sum runs from August 12, 2001, the date the loss was originally incurred.

11. Demurrage was incurred at the discharge port of Bissau in the amount of $51,461.11, no part of which has been paid, although duly demanded by Plaintiff of Defendant. Interest on this sum also runs from November 18, 2001, the date payment was originally due.

12. When cargo was loaded on the Vessel at Karachi, Defendant arranged for bills of lading to be issued whose terms and conditions imposed upon Plaintiff, as owner of the Vessel, more onerous liabilities than those assumed by Plaintiff under the charter party with Defendant dated May 7, 2001. In legal proceedings commenced in Court in Marseilles, France, Plaintiff was subsequently held liable to and had to pay a judgment in favor of AXA Assurance Senegal ("AXA") in the amount of €58,940.63 plus interest and €3,000 in respect of AXA's costs.

13. Plaintiff subsequently paid €65,087.91 to discharge the judgment obtained against it, receipt of which payment was acknowledged by a receipt and release dated March 23, 2004.

14. Because Defendant arranged for the issuance of bills of lading for the cargo whose terms and conditions imposed upon Plaintiff, as owner of the Vessel, more onerous liabilities than those assumed by Plaintiff under the charter party and because those bills of lading formed the basis on which AXA obtained judgment against Plaintiff, the latter is entitled to recover full and complete indemnity from Defendant for the amounts Plaintiff has had to pay to satisfy the judgment in favor of AXA.

15. In the same proceedings described in paragraph 11 above in which Plaintiff was held liable to AXA, the Court in Marseilles, France ruled that a company named "Olam Cameroon" was required to pay Plaintiff the sum of €27,196.82 plus interest and €3,000 in respect of costs in settlement of Plaintiff's counterclaim. This resulted

from the fact that the claim for short delivery of cargo at Bissau for which AXA brought suit was due to an overlanding of cargo at Douala. Since the cargo receiver at both ports was the same legal entity or at least part of the same group of companies in both ports, no loss had resulted.

16. Although the French Court ruled in favor of Plaintiff for the amounts set forth in paragraph 13 above and Plaintiff tried to collect on its judgment in Cameroon, it ultimately proved to be a practical impossibility for Plaintiff to enforce the French judgment against Olam Cameroon in that country.

17. As a result of the events and developments described in paragraphs 11 through 14 above, Plaintiff has suffered damages in the amount of €95,658.66, consisting of €65,087.91, the amount it was required to pay to discharge the judgment in favor of AXA; €19,702.52, the amount it spent in legal fees in contesting the French proceedings; and €10,868.23, the amount it incurred in legal fees in attempting to recover on its successful counterclaim against Olam Cameroon in the Cameroon proceedings. The amount of €95,658.66 is equal to $134,404.38 according to the exchange rate prevailing on October 10, 2007.

18. The amount of €65,087.91 remains unpaid by Defendant and interest is claimed thereon from March 23, 2004, the date Plaintiff paid the judgment in favor of AXA, and from the same date with respect to €19,702.52, the amount plaintiff spent in legal fees in contesting the French proceedings. In addition, interest is claimed on €10,868.23, the legal fees related to the proceedings in Cameroon from May 28, 2006, which is four weeks after the date of the last invoice from Plaintiff's attorneys in that country.

19. In summary, the principal amounts claimed by Plaintiff are as follows:

| | | |
|---|---|---:|
| a) | Demurrage at Karachi | $54,177.77 |
| b) | Demurrage at Douala | 43,450.00 |
| c) | Detention at Douala | 8,583.33 |
| d) | Demurrage at Bissau | 51,461.11 |
| e) | Legal proceedings (paragraphs 12 – 17) | <u>134,404.58</u> |
| | Total: | $292,076.79 |

20. In addition, Plaintiff claims interest on the above principal amounts in accordance with the usual practice in London maritime arbitration from the dates set forth in paragraphs 8, 9, 10, 11 and 18 above to a date approximately one year hence, the latter to provide for the further accumulation of interest while the arbitration takes place. As of October 11, 2007, said interest (projected out to November 18, 2008) amounts to $154,624.90.

### ARBITRATION IN LONDON

21. Pursuant to clause 20 of the charter party, any dispute arising out of the contract must be referred to arbitration in London, with English law to apply to the interpretation and execution of the contract.

22. Accordingly, Plaintiff demanded arbitration of Defendant on or about June 20, 2003 and appointed as its arbitrator Mr. William Packard.

23. Unfortunately, Mr. Packard, an esteemed member of the London shipping and arbitration community, passed away in January of this year. Accordingly, Plaintiff appointed Mr. Mark Hamsher as its arbitrator in place and instead of Mr. Packard and notified Defendant of Mr. Hamsher's appointment by facsimile message dated January 23, 2007.

24. Defendant failed to respond to Plaintiff's demand to arbitrate and its appointment of Mr. Hamsher as its arbitrator. When the appropriate amount of time passed under the requirements of English law as it relates to arbitration, Plaintiff then appointed Mr. Hamsher to serve as sole arbitrator in the matter. The appointment of Mr. Hamsher as sole arbitrator was communicated to Defendant by facsimile message on February 28, 2007.

### AMOUNT FOR WHICH ATTACHMENT SOUGHT

25. In addition to an attachment in the full principal amount of the claims as summarized in Paragraph 19 above and interest as described in Paragraph 20 above, Plaintiff also seeks an attachment over an additional sum to cover its anticipated attorneys' fees and costs, all of which are routinely recoverable under English law in London arbitration. (*See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 265 (2d

Cir. 2002), where the Rule B attachment the Court of Appeals reinstated covered "an amount that includes interest and anticipated attorneys' and arbitrators' fees.")

26. Plaintiff estimates, as nearly as can be computed presently, these additional damages and costs for arbitrating its claims to be $115,000.00 in estimated U.K. counsel fees, costs, and arbitrators' fees, which will be incurred in conjunction with the London arbitration and which are recoverable there.

## THE ATTACHMENT

27. Based upon the foregoing, the total sum sought to be attached is $561,701.69, consisting of the principal sum of $292,076.79, interest to date in the amount of $118,522.79, interest through the date of the award (i.e., for another year) in the amount of an additional $36,102.11, and anticipated legal fees and disbursements in the estimated amount of $115,000.00.

28. For its part, Plaintiff has satisfied and performed all of its obligations to date under the terms of the charter party.

29. Upon information and belief, and after investigation, Plaintiff has determined that the Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, but upon information and belief Defendant has, or will have during the pendency of this action, assets within this District comprising, *inter alia*, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of the Defendant (hereinafter "Assets"), moving through garnishee banking institutions including but not limited to ABN Amro; American Express Bank; Bank of America NA; Bank of New York; Citibank; Deutsche Bank AG; Fleet National Bank, Habib American Bank, Habib Bank Ltd., HSBC Bank USA NA; JP Morgan Chase Bank; Mashreq Bank, National Bank of Pakistan, Standard Chartered Bank; UBS AG, Wachovia Bank and/or Wells Fargo Bank NA.

30. The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the Defendant held by or in the custody or temporary possession of the

aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant and to secure Plaintiff's claims as described above.

WHEREFORE, Plaintiff prays:

a.  That process in due form of law according to the usual practice of this Court may issue against Defendant citing it to appear and answer the foregoing, and failing such appearance and answer, to have judgment by default against the Defendant in the principal amount of the claim plus interest, costs and attorneys' fees;

b.  That since Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching and restraining all Assets of Defendant in an amount up to and including the sum of $561,701.69, including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendant including, but not limited to such Assets as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of the aforesaid banking institutions including but not limited to ABN Amro; American Express Bank; Bank of America NA; Bank of New York; Citibank; Deutsche Bank AG; Fleet National Bank, Habib American Bank, Habib Bank Ltd., HSBC Bank USA NA; JP Morgan Chase Bank; Mashreq Bank, National Bank of Pakistan, Standard Chartered Bank; UBS AG, Wachovia Bank and/ or Wells Fargo Bank NA. and/or any other garnishee(s) upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action may be served;

c.  That an Order be entered directing Defendant to proceed to London arbitration for the adjudication of the merits of the claims;

d.  That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary in order to give effect to the aforesaid London arbitration; and

e.  For such other and further or different relief as this Court may deem just and proper in the premises.

Dated:  New York, NY
        October 11, 2007

                                BURKE & PARSONS
                                Attorneys for Plaintiff
                                ISLAMIC REPUBLIC OF IRAN
                                SHIPPING LINES

                        By      *Keith W. Heard* (signature)
                                Keith W. Heard (KH-8578)
                                100 Park Avenue
                                New York NY 10017-5533
                                (212) 354-3800

## VERIFICATION

STATE OF NEW YORK    )

COUNTY OF NEW YORK    )

Keith W. Heard, being duly sworn, deposes and says:

1. I am a member of the bar of this Honorable Court and of the firm of Burke & Parsons, attorneys for the Plaintiff.

2. I have read the foregoing Complaint and I believe the contents thereof are true.

3. This Verification has been made by deponent and not by Plaintiff because Plaintiff is a foreign corporation, and has no officers or directors within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

_____
Keith W. Heard

Sworn to before me this
11TH day of October, 2007

_____
Notary Public

Penny S. Martinez
Notary Public State of New York
No. 01MA4865021 Qualified in Suffolk County
Certificate Filed in New York County
Commission Expires 29 September 2010