Keith W. Heard (KH-8578)
Michael J. Walsh (MW-6578)
Burke & Parsons
100 Park Avenue
New York NY 10017-5533
(212) 354-3800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| ISLAMIC REPUBLIC OF IRAN SHIPPING LINES,<br><br>　　　　　　　　Plaintiff,<br><br>-against-<br><br>GHAFFAR CORPORATION and ACTIVE MARKETING<br><br>　　　　　　　　Defendants. | **AMENDED VERIFIED COMPLAINT**<br><br>07 Civ. 8782 (CSH) |

　　Plaintiff, ISLAMIC REPUBLIC OF IRAN SHIPPING LINES (hereinafter "Plaintiff"), by its attorneys Burke & Parsons, as and for its Verified Complaint against Defendants, GHAFFAR CORPORATION and ACTIVE MARKETING (hereinafter "Defendants"), alleges upon information and belief as follows:

　　1.　This action involves claims for the breach of a maritime contract, which are admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This action also arises under the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

### THE PARTIES

　　2.　At all times relevant hereto, Islamic Republic of Iran Shipping Lines was and still is a foreign corporation organized and existing under and by virtue of the laws of the Islamic Republic of Iran with an office and place of business at No. 37, Aseman Tower, Sayyade Shirazee Square, Pasdaran Avenue, Teheran, Iran.

3. At all times relevant hereto, Defendant Ghaffar Corporation was and still is a foreign corporation organized and existing under and by virtue of the laws of Pakistan with an office and place of business at 104 Khayyam Chambers, Sharah-e-Faisal, P.E.C.H.S., Nursery, Karachi 75400, Pakistan.

4. At all times relevant hereto, Defendant Active Marketing was and still is a foreign corporation or other business entity organized and existing under and by virtue of the laws of Pakistan with an office and place of business at 104 Khayyam Chambers, Sharah-e-Faisal, P.E.C.H.S., Nursery, Karachi 75400, Pakistan.

5. Upon information and belief, Ghaffar Corporation and Active Marketing are not separate and distinct business entities. Rather, they are operated as one enterprise by the same people out of the same office in Karachi.

6. Although Plaintiff is an entity organized and existing under and by virtue of the laws of the Islamic Republic of Iran, it is entitled to file and maintain this action because section 560.525(a)(3) of the Iranian Transactions Regulations, 31 C.F.R. Part 560, authorizes the "initiation and conduct of domestic United States legal, arbitration, or administrative proceedings on behalf of the Government of Iran or a person in Iran".

## THE DISPUTES

7. At all times relevant hereto, Plaintiff was and still is the owner of the vessel M/V IRAN SA'LAM (hereinafter the "Vessel").

8. Pursuant to a voyage charter party dated May 7, 2001 which incorporated the GENCON 1994 form, Plaintiff chartered its Iranian-flag motor vessel IRAN SA'LAM to Defendant Ghaffar for a voyage from Karachi, Pakistan to Douala, Cameroun to carry a cargo of bagged rice. A copy of the charter party is annexed as Exhibit A to this Verified Complaint.

9. At Defendant Ghaffar's request, an amendment to the agreed terms of the charter party was negotiated (while the Vessel was held up at Douala) by which Plaintiff agreed that the Vessel would complete discharge at a second port, Bissau, in Guinea Bissau, another West African nation.

10. Demurrage was incurred at the load port of Karachi in the amount of $54,177.77, no part of which has been paid, although duly demanded by Plaintiff of

Defendant. Interest on this sum runs from November 18, 2001, the date payment was originally due.

11. Demurrage was incurred at the discharge port of Douala in the amount of $43,450.00, no part of which has been paid, although duly demanded by Plaintiff of Defendants. Interest on this sum also runs from November 18, 2001, the date payment was originally due.

12. Additional delays were incurred at Douala, outside of those for which demurrage serves as compensation, as a result of Defendant Ghaffar's instructions to the stevedores at that port to stop discharging the Vessel, pending agreement between Plaintiff and Defendant Ghaffar over the terms for varying the charter party so as to allow said Defendant to discharge the balance of the cargo at a second port, which turned out to be Bissau. As a result of these additional delays, Plaintiff has a claim for detention in the amount of $8,583.33, no part of which has been paid, although duly demanded by Plaintiff of Defendants. Interest on this sum runs from August 12, 2001, the date the loss was originally incurred.

13. Demurrage was incurred at the discharge port of Bissau in the amount of $51,461.11, no part of which has been paid, although duly demanded by Plaintiff of Defendants. Interest on this sum also runs from November 18, 2001, the date payment was originally due.

14. When cargo was loaded on the Vessel at Karachi, Defendant Ghaffar arranged for bills of lading to be issued whose terms and conditions imposed upon Plaintiff, as owner of the Vessel, more onerous liabilities than those assumed by Plaintiff under the charter party with said Defendant dated May 7, 2001. In legal proceedings commenced in Court in Marseilles, France, Plaintiff was subsequently held liable to and had to pay a judgment in favor of AXA Assurance Senegal ("AXA") in the amount of €58,940.63 plus interest and €3,000 in respect of AXA's costs.

15. Plaintiff subsequently paid €65,087.91 to discharge the judgment obtained against it, receipt of which payment was acknowledged by a receipt and release dated March 23, 2004.

16. Because Defendant Ghaffar arranged for the issuance of bills of lading for the cargo whose terms and conditions imposed upon Plaintiff, as owner of the Vessel, more onerous liabilities than those assumed by Plaintiff under the charter party and

because those bills of lading formed the basis on which AXA obtained judgment against Plaintiff, the latter is entitled to recover full and complete indemnity from Defendants for the amounts Plaintiff has had to pay to satisfy the judgment in favor of AXA.

17. In the same proceedings described in paragraph 14 above in which Plaintiff was held liable to AXA, the Court in Marseilles, France ruled that a company named "Olam Cameroon" was required to pay Plaintiff the sum of €27,196.82 plus interest and €3,000 in respect of costs in settlement of Plaintiff's counterclaim. This resulted from the fact that the claim for short delivery of cargo at Bissau for which AXA brought suit was due to an overlanding of cargo at Douala. Since the cargo receiver at both ports was the same legal entity or at least part of the same group of companies in both ports, no loss had resulted.

18. Although the French Court ruled in favor of Plaintiff for the amounts set forth in paragraph 17 above and Plaintiff tried to collect on its judgment in Cameroon, it ultimately proved to be a practical impossibility for Plaintiff to enforce the French judgment against Olam Cameroon in that country.

19. As a result of the events and developments described in paragraphs 14 through 17 above, Plaintiff has suffered damages in the amount of €95,658.66, consisting of €65,087.91, the amount it was required to pay to discharge the judgment in favor of AXA; €19,702.52, the amount it spent in legal fees in contesting the French proceedings; and €10,868.23, the amount it incurred in legal fees in attempting to recover on its successful counterclaim against Olam Cameroon in the Cameroon proceedings. The amount of €95,658.66 is equal to $148,586.00 according to the exchange rate prevailing on March 26, 2008.

20. The amount of €65,087.91 remains unpaid by Defendants and interest is claimed thereon from March 23, 2004, the date Plaintiff paid the judgment in favor of AXA, and from the same date with respect to €19,702.52, the amount plaintiff spent in legal fees in contesting the French proceedings. In addition, interest is claimed on €10,868.23, the legal fees related to the proceedings in Cameroon from May 28, 2006, which is four weeks after the date of the last invoice from Plaintiff's attorneys in that country.

21. In summary, the principal amounts claimed by Plaintiff are as follows:

| | | |
|---|---|---:|
| a) | Demurrage at Karachi | $54,177.77 |
| b) | Demurrage at Douala | 43,450.00 |
| c) | Detention at Douala | 8,583.33 |
| d) | Demurrage at Bissau | 51,461.11 |
| e) | Legal proceedings (paragraphs 12 – 17) | 148,586.00 |
| | Total: | $306,258.21 |

22. In addition, Plaintiff claims interest on the above principal amounts in accordance with the usual practice in London maritime arbitration from the dates set forth in paragraphs 10 through 13 and 15 above to a date approximately one year hence, the latter to provide for the further accumulation of interest while the arbitration takes place. As of March 26, 2008, said interest (projected out to May 19, 2009) amounted to $205,711.29.

## ARBITRATION IN LONDON

23. Pursuant to clause 20 of the charter party, any dispute arising out of the contract must be referred to arbitration in London, with English law to apply to the interpretation and execution of the contract.

24. Accordingly, Plaintiff demanded arbitration of Defendant Ghaffar on or about June 20, 2003 and appointed as its arbitrator Mr. William Packard.

25. Unfortunately, Mr. Packard, an esteemed member of the London shipping and arbitration community, passed away in January of last year. Accordingly, Plaintiff appointed Mr. Mark Hamsher as its arbitrator in place and instead of Mr. Packard and notified Defendant Ghaffar of Mr. Hamsher's appointment by facsimile message dated January 23, 2007.

26. Defendant Ghaffar failed to respond to Plaintiff's demand to arbitrate and its appointment of Mr. Hamsher as its arbitrator. When the appropriate amount of time

passed under the requirements of English law as it relates to arbitration, Plaintiff then appointed Mr. Hamsher to serve as sole arbitrator in the matter. The appointment of Mr. Hamsher as sole arbitrator was communicated to Defendants by facsimile message on February 28, 2007.

### THE RELATIONSHIP BETWEEN GHAFFAR AND ACTIVE MARKETING

27. Although the voyage charter party dated May 7, 2001 was agreed between plaintiff and defendant Ghaffar Corporation, at some point either before or after that date, the business of the two defendants became indistinguishable.

28. The defendants publicly advertise that they are engaged in the same business of buying and selling rice and records maintained by the Rice Exporters Association of Pakistan show that the defendants have the same address.

29. Calls placed to Ghaffar's telephone number are answered by individuals who sometimes respond that the caller has reached Ghaffar and at other times respond that the caller has reached Active Marketing.

30. Visitors to Khayyam Chambers who ask to be directed to the office of Ghaffar Corporation are shown to the office of Active Marketing.

31. Upon information and belief, "Ghaffar Corporation" is nothing more than a sham through which defendant Active Marketing conducts its business.

32. Active Marketing dominates and controls Ghaffar Corporation and conducts the latter's business operations as if they were Active Marketing's own, such that Active Marketing is Ghaffar's alter ego and vice versa.

33. Upon information and belief, and in the alternative, Active Marketing acted as an undisclosed or partially disclosed principal in the May 7, 2001 charter party entered into by Ghaffar Corporation , such that Active Marketing was a party thereto and assumed the liabilities thereof, and is obligated for breaches of that charter.

34. Upon information and belief, and in the alternative, Active Marketing and Ghaffar were partners and/or joint venturers in the charter such that Active Marketing is liable for debts arising out of the Charter.

35. Upon information and belief, and in the alternative, Active Marketing is the *de facto* or *de jure* successor in interest to Ghaffar Corporation and has assumed and/or

is fully responsible for the debts of Ghaffar, including the claims alleged in this Amended Complaint.

## AMOUNT FOR WHICH ATTACHMENT SOUGHT

36. In addition to an attachment in the full principal amount of the claims as summarized in Paragraph 21 above and interest as described in Paragraph 22 above, Plaintiff also seeks an attachment over an additional sum to cover its anticipated attorneys' fees and costs, all of which are routinely recoverable under English law in London arbitration. (*See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 265 (2d Cir. 2002), where the Rule B attachment the Court of Appeals reinstated covered "an amount that includes interest and anticipated attorneys' and arbitrators' fees.")

37. Plaintiff estimates, as nearly as can be computed presently, these additional damages and costs for arbitrating its claims to be $115,000.00 in estimated U.K. counsel fees, costs, and arbitrators' fees, which will be incurred in conjunction with the London arbitration and which are recoverable there.

## THE ATTACHMENT

38. Based upon the foregoing, the total sum sought to be attached is $626,969.50, consisting of the principal sum of $306,258.21, interest in the amount of $205,711.29, and anticipated legal fees and disbursements in the estimated amount of $115,000.00.

39. For its part, Plaintiff has satisfied and performed all of its obligations to date under the terms of the charter party.

40. Upon information and belief, and after investigation, Plaintiff has determined that the Defendants cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, but upon information and belief Defendants have, or will have during the pendency of this action, assets within this District comprising, *inter alia*, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of the Defendants (hereinafter "Assets"), moving through garnishee banking institutions including but not limited to ABN Amro; American Express Bank; Bank of America NA; Bank of New York; Citibank; Deutsche Bank AG; Fleet National Bank, Habib American Bank, Habib Bank Ltd., HSBC Bank USA NA; JP Morgan Chase Bank;

Mashreq Bank, National Bank of Pakistan, Standard Chartered Bank; UBS AG, Wachovia Bank and/or Wells Fargo Bank NA.

41. The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the Defendants held by or in the custody or temporary possession of the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant and to secure Plaintiff's claims as described above.

WHEREFORE, Plaintiff prays:

a. That process in due form of law according to the usual practice of this Court may issue against Defendants citing them to appear and answer the foregoing, and failing such appearance and answer, to have judgment by default against the Defendants in the principal amount of the claim plus interest, costs and attorneys' fees;

b. That since Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Amended Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching and restraining all Assets of Defendants in an amount up to and including the sum of $626,969.50, including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendants including, but not limited to such Assets as may be held, received or transferred in their own names (together or separately) or as may be held, received or transferred for the benefit of either one of them at, moving through, or within the possession, custody or control of the aforesaid banking institutions including but not limited to ABN Amro; American Express Bank; Bank of America NA; Bank of New York; Citibank; Deutsche Bank AG; Fleet National Bank, Habib American Bank, Habib Bank Ltd., HSBC Bank USA NA; JP Morgan Chase Bank; Mashreq Bank, National Bank of Pakistan, Standard Chartered Bank; UBS AG, Wachovia Bank and/ or

Wells Fargo Bank NA. and/or any other garnishee(s) upon whom a copy of the Amended Process of Maritime Attachment and Garnishment issued in this action may be served;

c. That an Order be entered directing Defendants to proceed to London arbitration for the adjudication of the merits of the claims;

d. That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary in order to give effect to the aforesaid London arbitration; and

e. For such other and further or different relief as this Court may deem just and proper in the premises.

Dated:   New York, NY
         April 15, 2008

                              BURKE & PARSONS
                              Attorneys for Plaintiff
                              ISLAMIC REPUBLIC OF IRAN
                              SHIPPING LINES

By _____
      Keith W. Heard (KH-8578)
      100 Park Avenue
      New York NY  10017-5533
      (212) 354-3800

# VERIFICATION

STATE OF NEW YORK     )

COUNTY OF NEW YORK    )

    Keith W. Heard, being duly sworn, deposes and says:

1. I am a member of the bar of this Honorable Court and of the firm of Burke & Parsons, attorneys for the Plaintiff.

2. I have read the foregoing Amended Complaint and I believe the contents thereof are true.

3. This Verification has been made by deponent and not by Plaintiff because Plaintiff is a foreign corporation, and has no officers or directors within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

                                                                _____
                                                                       Keith W. Heard

Sworn to before me this
15th day of April, 2008.

_____
Notary Public

                Penny S. Martinez
       Notary Public State of New York
  No. 01MA4865021 Qualified in Suffolk County
     Certificate Filed in New York County
   Commission Expires 29 September 2010